Argued September 17, affirmed October 5, 1920.

## NIGHTINGALE v. TAYLOR.

(192 Pac. 652.)

**Logs and Logging—Lien for Logging and Manufacturing Timber Without Segregation of Items Unenforceable.**

1. Under Sections 7461, 7463, L. O. L., a combined or lump lien for logging, manufacturing timber and stumpage cannot be enforced without a segregation of the items constituting the lien and a specification of the amount of each, and claimed liens, not segregating the time when claimants were employed as loggers from the time when they performed labor in the manufacture of the lumber, or specifying the amount claimed for each service, are unenforceable.

[By whom and for what labor or services logger's lien may be claimed, see note in Ann. Cas. 1916C, 198.]

From Marion: GEORGE G. BINGHAM, Judge.

Department 2.

At the times alleged in the complaint the defendant Taylor was the owner and operator of a portable sawmill on the banks of a tributary of Silver Creek, east of Silverton in Marion County. Between September 18, 1918, and February 18, 1919, the plaintiff and his assignors were in the employ of the defendant Taylor and, as the complaint alleges, "performed labor and assisted in obtaining and securing saw logs, and assisted in manufacturing the said saw logs and other timber into lumber, for the defendant." For failure to receive their money the respective claimants filed liens, the material parts of which are as follows:

"Notice is hereby given that Ray Nightingale claims a lien upon the following described property; approximately 180,000 feet of planks, ties, timbers and side lumber located at the Southern Pacific depot at Silverton, Marion County, Oregon, together with about 50,000 feet of planks, ties, timbers, side lumber and other lumber located upon the Heelic-Funrue place in T. 7 S. R. 1 E. of W. M. in Marion County, Oregon, at the sawmill of the defendant herein, together with a quantity of saw logs located in the pond in said sawmill upon the said Funrue place, together with a quantity of logs in the woods located upon the said Heelic-Funrue place and the F. S. Hunter place adjoining thereto, which said timber, planks, logs, ties and lumber were cut and manufactured in Marion County, state of Oregon, and which are unmarked for identification and which are now lying and being in Marion County, Oregon, as aforesaid, which said lien is for labor performed upon and assistance rendered in the manufacture of said logs and lumber; that the name of the owner or reputed owner is W. A. Taylor, and that the said W. A. Taylor employed the said Ray Nightingale to perform such labor and render such assistance upon the fol-

lowing details and conditions, to-wit: $4.00 a day as the agreed price; that said contract has been faithfully performed and fully complied with on the part of the said Ray Nightingale, who performed labor upon and assisted in cutting and manufacturing for the period of 33 days."

Except as to the name of the claimant, the date and the amount, the liens were all exactly alike. They were duly recorded in the office of the county clerk on February 24, 1919, and this suit to foreclose was commenced on the following day.

Hunter was the owner of the land upon which the logs were cut, and filed a stumpage lien to secure an unpaid balance due him from Taylor. It appears that about 180,000 feet of the lumber which was sawed at the mill was hauled about three miles to the railroad at Silverton, and was purchased by the defendant Risteigen. For such reasons, Hunter and Risteigen were made defendants.

The defendant Taylor made default, and has left the state. Hunter filed an answer, denying all of the material allegations of the complaint and praying for a decree foreclosing his stumpage lien, amounting to $470.24, and for $50 as reasonable attorney's fee. After making similar denials, Risteigen alleged in his answer that under a written contract dated September 12, 1917, he purchased and paid for the lumber as fast as it was cut, and is now such owner and purchaser in good faith.

A reply was filed and testimony was taken. The Circuit Court found that the lien claimants had performed labor and services as stated in their respective liens, and further that:

"The work and labor of the above named persons was in the mill and in the woods in the manufacture of lumber, in cutting and securing sawlogs, and no

attempt was made to keep a separate statement of each. The attempt at the trial to make an apportionment was a mere guess on the part of the witnesses. The plaintiff's assignor E. E. Taylor performed work and labor at the mill as a checker of the lumber hauled from the mill and other service in the nature of bookkeeping, and cooked for the men, working at the mill and in the woods during the six months prior to the closing of the mill on the eighteenth day of February, 1919. The men working in the woods obtained their meals and lodging at the boarding-house at the mill and no separate account was kept of the men working in the woods and in the sawmill.

"Within thirty days from the close of the rendition of services the plaintiff and his assignors filed for record with the county clerk of Marion County, State of Oregon, a claim for lien, in which no attempt was made to segregate the labor performed in the woods in securing the logs from the labor performed at the mill in the manufacture of the same into lumber and ties, but such services were stated to be a lump sum of money, and to have been earned in securing sawlogs and in manufacturing the same into lumber and ties. With the exception of the segregating of the work in the woods from the labor at the mill, the liens are in proper form, filed in time and otherwise conform to Section 7467, Lord's Oregon Laws. * *

"Of such timber so cut there is now in the timber 202,000 feet, at the mill 75,000 feet, and cut into lumber and ties now at the millyard 50,000 feet, and the same consists of all the lumber and logs located at the mill and all of the logs and trees in the woods cut but not hauled to the mill."

It was also found by the court that the Hunter lien was valid and that Risteigen was the owner of the lumber at Silverton, as he claimed.

A decree was rendered foreclosing Hunter's lien and dismissing the suit as to the plaintiff, upon the ground that his liens were void. The plaintiff ap-

peals, contending that the Circuit Court erred in not sustaining his liens, in allowing Hunter's lien, and in rendering a decree in favor of Risteigen.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Walter C. Winslow.*

For respondent there was a brief and an oral argument by *Mr. Custer E. Ross.*

JOHNS, J.—1. It appears from the plaintiff's lien that his claim is for work alleged to have been done in logging and manufacturing logs into lumber, and that it is upon the logs in the woods adjacent to the mill, in the mill pond and the roll-way, 50,000 feet of lumber at the mill and 180,000 feet of lumber at the railroad siding at Silverton, about three miles from the mill.

There are three classes of liens provided by the act of February 20, 1891, Laws of 1891, page 117, the first three sections of which are identical with Sections 7461, 7462 and 7463, L. O. L., and all of which were enacted at the same time. Section 7461 reads in part as follows:

"Every person performing labor upon or who shall assist in obtaining or securing sawlogs, spars, piles, or other timber, has a lien upon the same for the work or labor done. * * *"

Under this section the lien may be enforced, not only upon the logs, but upon the manufactured product so long as it can be traced and identified. Section 7462 gives a lien to "every person performing labor upon, or who shall assist in manufacturing sawlogs or other timber into lumber," so long as "the same remains at the yard wherein manufac-

tured.'' Under this section the right to a lien is
limited to the manufactured lumber only, and only
so long as it remains in the millyard. Such a lien
is lost when the lumber is removed from the yard.
Section 7463 provides that—            ∘

''Any person who shall permit another to go upon
his timber land and cut thereon sawlogs, spars, piles,
or other timber, has a lien upon such logs, spars,
piles, and timber for the price agreed to be paid for
such privilege, or for the price such privilege or the
stumpage thereon would be reasonably worth.''

It will be noted that the nature and extent of this
lien are almost identical with those of a logger's lien
under Section 7461, L. O. L.

The plaintiff contends that because sections 7461
and 7462 were enacted at the same time and are a
part of the same statute, a logger's lien can be com-
bined with one for manufacturing lumber. If that
were true, for the same reason it would follow that a
stumpage lien could also be combined with either or
both of them, because Section 7463 was enacted at
the same time and is a part of the same statute. Much
importance is attached to the fact that Section 7467
says that ''claims shall be substantially'' in a certain
form, and it is contended that the form given is iden-
tical for all of such liens. But, as pointed out in the
opinion of the trial judge, in one instance the paren-
thetical modification reads ''cut or manufactured,''
and in another it reads ''cutting or manufacturing
logs or lumber.'' If it had been intended that the
same words should be used in either class of items,
there would be no reason for making the distinction.

This case was argued and decided in the Circuit
Court prior to the publication of the opinion of this
court in *First National Bank* v. *Wegener,* 94 Or. 318,
324 (181 Pac. 990, 186 Pac. 41), where it was held:

"Section 7461, L. O. L., giving laborer lien for labor in the cutting of logs, and Section 7462, providing for laborers' lien for labor performed in the manufacture of lumber, though parts of the same act are separate and distinct from each other; the former being intended for security to the logger and the latter to the operators in the mill.

"Even if laborer could make and enforce a joint or dual lien for services in cutting logs under Section 7461, L. O. L., and in manufacturing lumber under Section 7462, he would be required to specify in his statement the amount and value of his labor for cutting logs, and the amount and value thereof in manufacturing lumber."

It was never the intent of the legislature that a combined or lump lien could be enforced under sections 7461–7463, L. O. L., for logging, manufacturing lumber stumpage, without at least a segregation of the items constituting the lien and a specification of the amount of each item. It will be noted that the liens here do not segregate the time when the claimants were employed as loggers from the time that they performed labor in the manufacture of lumber, or specify the amount claimed for each service. During the trial, over the objections of the defendants, the plaintiff undertook to prove these facts by oral testimony. The Circuit Court found that the testimony offered upon that point was more or less conjecture, not clear or satisfactory, and we approve that finding.

The decree is affirmed, without costs to either party.

AFFIRMED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.